# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| THE UNITED STATES OF AMERICA, | * | |
|---|---|---|
| v. | * | CRIMINAL NO. JKB-14-0219 |
| ALLEN JEFFREY MAXSON, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Allen Jeffrey Maxson ("Defendant") pleaded guilty to a one count information charging him with abusive sexual contact in violation of 18 U.S.C. § 2244(a)(5). The Court imposed a sentence of 172 months' imprisonment to be followed by supervised release for a term of life. The Court also imposed certain special conditions of supervised release, including that Defendant "shall participate in a sex offender treatment program" and "shall follow the rules and regulations of the sex offender treatment program as directed by the probation office." (ECF No. 54, Judgment In A Criminal Case, at 4.) The Court, with the parties' consent, retained jurisdiction over the case in order to resolve an outstanding issue regarding the propriety of a special condition of supervised release requested by the Government. That issue, along with another subsequently raised jointly by the parties, has been briefed (ECF Nos. 58, 60, 62, 63, 66 & 67), and no hearing is required, Local Rule 105.6 (D. Md. 2016). For the reasons explained below, the Court declines to impose restrictions on Defendant's possession or use of adult pornography as a condition of supervised release. The Court also amends the restriction previously imposed on Defendant's use of the Internet.

I. *Legal Standard*

District courts have "broad latitude" to impose appropriate conditions of supervised release. *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009). However, any condition must satisfy two fundamental prerequisites. First, the condition must be "'reasonably related' to the factors referred to in 18 U.S.C. § 3583(d)(1), which include 'the nature and circumstances of the offense and the history and characteristics of the defendant,' *id.* § 3553(a)(1); 'protect[ing] the public from further crimes,' *id.* § 3553(a)(2)(C); and 'provid[ing] the defendant with needed . . . medical care[ ] or other correctional treatment,' *id.* § 3553(a)(2)(D)." *Armel*, 585 F.3d at 186 (alterations in original). Second, the condition must "'involve[ ] no greater deprivation of liberty than is reasonably necessary' to achieve the goals enumerated in § 3553(a)." *Id.* (quoting 18 U.S.C. § 3583(d)(2)) (alteration in original). Additionally, the sentencing court must provide "the rationale for the special conditions it imposes." *Id.*; *see, e.g.*, *United States v. Shannon*, 743 F.3d 496, 502 (7th Cir. 2014) ("Adequate findings are especially important when the subject matter of the ban is a lifetime ban on otherwise-legal material."); *United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999) ("[C]ourts of appeals have consistently required district courts to set forth factual findings to justify special . . . conditions.").

II. *Analysis*

A. *Adult Pornography Restriction*

At sentencing, the Government requested that the Court impose the following condition of supervised release:

> The defendant shall not own, use, possess, view or read any materials, including pictures, photographs, books, writings, drawings, videos, or video games, depicting and/or describing sexually explicit conduct, or frequent any place that is involved with pornography, as defined in 18 U.S.C. § 2256(2).

(ECF No. 39, Presentence Investigation Report at 23.) The Court declined to impose the condition at the time because the Government had not presented sufficient evidence of a relationship between the viewing of adult pornography and an increased risk of a person then viewing child pornography or otherwise acting on an impulse to engage in inappropriate sexual activity with children. The Court emphasized that it would not impose the condition sought by the Government "absent proof . . . of its efficacy, that it's legitimate, that it helps to achieve what we are absolutely trying to accomplish here, which is to prevent this defendant from re-engaging in horrible sexual misconduct directed at children." (ECF No. 62, Ex. 3, Sentencing Hr'g Tr. at 74; *see also id.* at 78 ("The government, if you want this condition, you've got to have experts that back it.").) The Court then ordered the parties to file a Joint Status Report disclosing the identities and qualifications of expert witnesses to testify at a hearing to be conducted to address the necessity of the requested condition.

Despite the additional time afforded by the Court, the Government has not presented sufficient evidence to support its request that Defendant be prohibited from possessing all forms of pornography. The Government's proposed condition rests on the assumption that access to adult pornography increases the likelihood that an individual convicted of sex abuse of minor will reoffend. But the Government has been unable to find a single expert willing to support this position in Court. Nor has the Government offered any studies or articles that support a connection between the viewing of adult pornography and an increased risk of inappropriate sexual activity with children.[1] The Government concedes as much itself, stating that "upon

---

[1] In its original submission to the Court, the Government did offer an unpublished, non-peer-reviewed paper authored by Dr. Jim Tanner, who holds a Ph.D. in sociology from the University of Illinois. In the paper, Dr. Tanner contends that "a prohibition against possessing or viewing any sexually explicit material should be a standard condition of supervision imposed on all convicted sex offenders." (ECF No. 63, Ex. 1, at 1.) Dr. Tanner

3

reviewing the available literature, [it] has seen no scientific or historical studies or academic papers—on either side of this issue—which establish or refute a direct causal link – or even correlation—between exposure to adult pornography and subsequent contact offenses against children." (ECF No. 63 at 2.) In short, the Government's requested special condition rests on nothing more than an unsupported assumption, which is insufficient to justify a lifelong supervised release condition that prohibits the Defendant from engaging in otherwise lawful conduct. Accordingly, the Court declines to impose as a condition of supervised release a prohibition on Defendant possessing and/or viewing adult pornography.

The Court's conclusion is consistent with that reached by other courts (and cited by Defendant) that have rejected similar conditions of supervised release based on inadequate factual support. *See, e.g.*, *United States v. Martinez-Torres*, 795 F.3d 1233, 1237 (10th Cir. 2015) ("The district court's sole expressed reason for the condition [banning adult pornography] was that Defendant had been convicted of a sex offense—intentionally causing the penetration of the sexual organ of a child younger than 14 years of age. But that is not enough."); *United States v. Taylor*, 796 F.3d 788, 793 (7th Cir. 2015) ("It is true that both Taylor's crime and adult pornography have to do with sexual activity. But there is no evidence that viewing or listening to adult pornography in any way led Taylor to commit the crime here [transferring obscene material to a person under the age of sixteen], or has led him to commit any other crime, nor is there any evidence in the record that viewing or listening to adult pornography would make the repeat of Taylor's crime or similar crimes any more likely."); *United States v. Voelker*, 489 F.3d 139, 151

---

suggests that "[p]rivate usage (in uncontrolled settings) of any sexually explicit material by convicted sex offenders is reasonably related to their offense as it serves to stimulate their sexual interest, which is known to be deviant in nature." (*Id.* at 3.) Dr. Tanner provides no support for this and many other broad-sweeping statements. Notably, Dr. Tanner declined a request by the Government to testify on this subject at the hearing proposed by the Court. The Government has failed to show that Dr. Tanner qualifies as an expert in the field of child sexual assault and pornography, and therefore the Court affords the attached submission no weight.

(3d Cir. 2007) ("[N]othing on this record suggests that sexually explicit material involving only adults contributed in any way to Voelker's offense [receipt and possession of child pornography], nor is there any reason to believe that viewing such material would cause Voelker to reoffend."). The Government, on the other hand, does not cite a single case where a court engaged with this issue and imposed a condition prohibiting the possession and viewing of adult pornography based solely on the sexual nature of the defendant's underlying conviction.

Moreover, neither the U.S. Probation Office nor the Sentencing Commission specifically recommends a blanket ban on adult pornography as a special condition of supervised release for individuals convicted of sex offenses. *See* U.S.S.G. § 5D1.3(d)(7). Both, however, do recommend that courts impose a condition requiring that individuals convicted of sex offenses participate in a sex-offense treatment program. *See id.*; U.S. Courts, Overview of Probation and Supervised Release Conditions, *Chapter 3: Restrictions on Viewing Sexually Explicit Materials*. And the Probation Office further recommends that a prohibition on viewing and possessing adult pornography may be appropriate when it is "based on the specific risks in the individual case." U.S. Courts, Overview of Probation and Supervised Release Conditions, *Chapter 3: Restrictions on Viewing Sexually Explicit Materials*. Importantly, the Probation Office states that, "[d]ue to the complex and individualized nature of sex offense-specific risk factors, probation officers should *not* recommend this condition until there has been an assessment of sexual deviance and risk by a sex offense-specific treatment provider." *Id.* (emphasis added). The Court finds that the individualized analysis recommended by the Probation Office is consistent with and appropriately tailored to achieve the goals enumerated in § 3553(a). Accordingly, the Court finds that, to the extent a sex offense-specific treatment provider determines that Defendant's individual characteristics present specific risks associated with viewing adult pornography,

5

Defendant may be prohibited from viewing adult pornography as part of an approved course of treatment, pursuant to Special Condition #10 imposed by the Court. (ECF No. 54 at 4.); *see, e.g.*, *United States v. Brigham*, 569 F.3d 220, 233–34 (5th Cir. 2009) (affirming three-year ban on possession of "pornographic sexually oriented or sexually stimulating materials" where defendant's sex-offender treatment counselor testified that even sexually explicit images of adults would reinforce the defendant's previous behavior involving child pornography). The Probation Officer should, in consultation with a sex offense treatment provider, "assess the need for this condition on an ongoing basis and modify the condition if treatment progress and goals of supervision indicate a modification is appropriate." U.S. Courts, Overview of Probation and Supervised Release Conditions, *Chapter 3: Restrictions on Viewing Sexually Explicit Materials*.

B. *Computer-Use Restriction*

The parties have jointly asked the Court to reconsider an additional supervised release condition already imposed by the Court. The condition at issue restricts Defendant from accessing any "computer systems, Internet-capable devices and/or similar electronic devices at any location . . . without the prior written approval of the U.S. Probation or Pretrial Services Officer." (ECF No. 54 at 4.) Both parties ask that the Court reconsider the propriety of this condition in light of the Supreme Court's recent decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), which struck down a North Carolina statute that prohibited convicted sex offenders—including those no longer on probation, parole, or supervised release—from accessing social media sites on the Internet.[2] Despite agreeing that *Packingham* warrants reconsideration of the special condition imposed by the Court, the Government contends that the condition may be maintained because unlike the blanket prohibition at issue in *Packingham*, the

---

[2] The Court held that the law violated the First Amendment on its face because it was "not narrowly tailored to serve the State's legitimate interest in protecting minors from sexual abuse." *Packingham*, 137 S Ct. at 1734–35.

condition here may be narrowly tailored by the Probation Office and modified or eliminated by the Court in the future.

Defendant's position is somewhat less clear. Defendant did not object to this special condition before or during sentencing. Defendant originally raised this issue approximately two months after *Packingham* was decided and argued that, in light of *Packingham*, the computer-use restriction "is in violation of the Constitution." (ECF No. 58 at 2.) However, Defendant subsequently shifted course in his later filings and expressly disavowed that he was mounting a constitutional challenge to the computer-use restriction based on *Packingham*. (ECF No. 67 at 2 ("Mr. Maxson does not argue that the computer restriction must be struck down as facially unconstitutional, nor that it could never be supportable as a supervised release condition for any criminal defendant. Rather, Mr. Maxson seeks to remove the computer restriction condition *in his case*, on the grounds that it fails to meet the statutory requirements of 18 U.S.C. § 3583(d).").) Defendant now contends that *Packingham* simply adds a "constitutional dimension" to the "'deprivation of liberty' prong of the statutory analysis." (*Id.*) Yet, Defendant cites exclusively to pre-*Packingham* case law, all of which was equally available to him—and equally persuasive—when he was sentenced and failed to challenge the computer-use restriction. True, *Packingham* may have somewhat strengthened Defendant's position, but it does not excuse his failure to raise such a readily available argument in the first instance. In short, the Court is troubled by Defendant's use of *Packingham* to revive his otherwise waived argument about the computer-use condition. That said, the Government does not object to reconsideration of this condition, and the Court has before it everything it needs to address the issue on the merits; therefore, it will do so.

The Court believes that Defendant's argument has merit even in the absence of *Packingham*. In particular, Defendant raises two salient points. First, a broad restriction on computer and Internet use is not reasonably related to the relevant sentencing factors where, as here, the defendant's criminal conduct did not involve the use of a computer/the Internet to "facilitate victimization of children."[3] *United States v. Holm*, 326 F.3d 872, 878 (7th Cir. 2003); *see United States v. LaCoste*, 821 F.3d 1187, 1191 (9th Cir. 2016) ("Precisely because access to the Internet has become so vital, courts have upheld conditions prohibiting all use of the Internet only in limited circumstances. Thus far, such conditions have been permitted in one of two scenarios: when use of the Internet was 'essential' or 'integral' to the offense of conviction, or when . . . the defendant had a history of using the Internet to commit other offenses."); *United States v. Ramos*, 763 F.3d 45, 62 (1st Cir. 2014) (noting that "cases in other circuits are in general accord: where a defendant's offense did not involve the use of the internet or a computer, and he did not have a history of impermissible internet or computer use, courts have vacated broad internet and computer bans regardless of [P]robation's leeway in being able to grant exceptions."); *United States v. Smathers*, 351 F. App'x 801, 802 (4th Cir. 2009) ("In this case, it is uncontested that Smathers's crime did not involve a computer or the Internet. Nor is there any evidence that Smathers has a history of using the computer or Internet to obtain or disseminate child pornography. Thus, we find that the district court plainly erred because the special condition is not reasonably related to the § 3553(a) factors . . . , nor is it in line with the Sentencing Commission's policy statement recommending '[a] condition limiting the use of a

---

[3] The Court notes that, although Defendant's instant offense did not involve the use of a computer, he was convicted in Pennsylvania state court of possession of child pornography. And Defendant did use a computer in the commission of that crime. Accordingly, Defendant does have "a history of using the Internet to commit other offenses." *LaCoste*, 821 F.3d at 1191. However, as explained *supra*, the Court believes that the goals of sentencing may be accomplished through more narrowly tailored means than obtaining written approval from the probation office for every use of the Internet by Defendant.

computer or an interactive computer service in cases in which the defendant used such items' in committing a sex offense." (quoting U.S.S.G. Manual § 5D1.3(d)(7)).

Second, the fact that Defendant may use the Internet if he obtains prior written approval from his probation officer cannot salvage this otherwise overly broad restriction. A number of circuits have rejected similar conditions and noted that a district court may not shift to the probation office its responsibility to ensure that a supervised release condition is consistent with the goals of sentencing. *See LaCoste*, 821 F.3d at 1192 ("If a total ban on Internet use is improper but a more narrowly tailored restriction would be justified, the solution is to have the district court itself fashion the terms of that narrower restriction. Imposing a total ban and transferring open-ended discretion to the probation officer to authorize needed exceptions is not a permissible alternative."); *Ramos*, 763 F.3d at 61 ("This authority of [P]robation or a future court to modify a sweeping ban on computer or internet use does not immunize the ban from an inquiry that evaluates the justification for the ban in the first instance.").

Simply put, given the integral role that computers and the Internet play in nearly every facet of modern-day life—a point driven home by the Supreme Court in *Packingham*—the Court must be careful not to impose a greater deprivation of liberty than is necessary. *See* 18 U.S.C. § 3583(d); *Packingham*, 137 S. Ct. at 1735 (noting that the Internet is "the most important place[] (in a spatial sense) for the exchange of views"); *LaCoste*, 821 F.3d at 1191 ("Use of the Internet is vital for a wide range of routine activities in today's world . . . . Cutting off all access to the Internet constrains a defendant's freedom in ways that make it difficult to participate fully in society and the economy."). Here, the Court has already imposed extensive conditions in the latter half of Additional Condition #6 that are narrowly tailored to ensure that Defendant's use of Internet-capable devices is subject to appropriate oversight and monitoring. Requiring that

9

Defendant obtain written approval from his probation officer prior to using Internet-capable devices is simply not necessary to achieve the goals of sentencing given the extensive controls that the probation office is already authorized to implement.

Accordingly, Additional Condition #6 will be modified to read as follows:

> The defendant's use of computer systems, Internet-capable devices and/or similar electronic devices is conditioned on his cooperation with the requirements for such use imposed by the U.S. Probation and Pretrial Services Office. Cooperation shall include, but not be limited to, participating in a Computer & Internet Monitoring Program, identifying computer systems, Internet-capable devices and/or similar electronic devices the defendant has access to, allowing the installation of monitoring software/hardware at the defendant's expense, and permitting random, unannounced examinations of computer systems, Internet-capable devices and similar electronic devices under the defendant's control. So long as the defendant complies with these and other reasonable measures implemented by the U.S. Probation and Pretrial Services Office, he shall not be required to obtain express approval from the U.S. Probation and Pretrial Services Office before using computer systems, Internet-capable devices and/or similar electronic devices.

### III. Conclusion

For the foregoing reasons, the Government's request that Defendant be prohibited from viewing or possessing adult pornography as a condition of supervised release is DENIED. The Court shall issue an Amended Judgment modifying Additional Condition #6 consistent with the foregoing Memorandum.

DATED this 7th day of December, 2017.

BY THE COURT:

/s/
James K. Bredar
Chief Judge